# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTOINE GATEWOOD, #333847 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-16-1644 |
| PETER JUKNELIS, Hearing Officer, | * | |
| JOHN WOLFE, WARDEN, JESSUP | | |
|   CORRECTIONAL INSTITUTION, | * | |
| STEPHEN T. MOYER, SECRETARY, | | |
|   D.P.S.C.S. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Antoine Gatewood is an inmate in the custody of the Maryland Division of Correction ("DOC"), presently incarcerated at North Branch Correctional Institution ("NBCI").

On May 25, 2016, Gatewood filed suit under 42 U.S.C. § 1983 against Hearing Officer Peter Juknelis; former Warden John Wolfe; and Stephen T. Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). ECF 1. The suit is rooted in events that occurred at Jessup Correctional Institution ("JCI") on July 27, 2012, where Gatewood was found in possession of eight sharpened metal objects. He was subsequently found guilty of prison rule violations by Hearing Officer Juknelis.

Gatewood alleges that plaintiff's disciplinary hearing violated his right to due process. ECF 1. As relief, Gatewood asks for reinstatement of 90 days of good conduct credit, back pay from his prison job, and punitive and compensatory damages. ECF 1 at 3.

The defendants have filed a motion to dismiss or, in the alternative, for summary judgment. ECF 14 ("Motion). The Motion is supported by several exhibits. Gatewood has filed an opposition (ECF 21, "Opposition"), with exhibits.[1] No reply was filed.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, I shall construe defendants' Motion as a motion for summary judgment and grant it.

## I. Factual Background

On July 27, 2012, correctional officers searched Gatewood's cell at JCI and discovered eight sharpened metal objects and one stone sharpener. ECF 1 at 3; ECF 14-2 at 5 (Disciplinary Hearing Record); ECF 21-1 at 32 (Administrative Law Judge's Decision). Gatewood was placed in administrative segregation and received a Notice of Inmate Rule Violation that same day. ECF 21 at 2.

A disciplinary hearing was held on August 23, 2012, at which Juknelis presided. ECF 14-2 at 4-7. Gatewood acknowledged the sharpened objects were his, but claimed he used them as tools to repair appliances. Gatewood did not claim he was innocent of the infractions. ECF 14-2 at 4-5; ECF 21-1 at 37-38.

However, at the hearing, Gatewood moved to dismiss the infractions against him, contending that the disciplinary hearing was untimely and contravened Code of Maryland Regulations ("COMAR") 12.02.27.12B. ECF 1 at 3. It provides:

> A defendant inmate shall appear before the hearing officer for a preliminary review of the rule violations charged within 7 business days after the following events have concluded in the specified order:

---

[1] Gatewood's exhibits include, *inter alia*, a Declaration attesting to the accuracy of the inmate hearing records he filed with his Opposition. ECF 21-1 at 7. He also filed a Declaration stating that he was not provided with documentation of the "reinstatement order" of his revoked 90 good conduct credits. ECF 21-1 at 46.

(1) The investigation of the reported event and misconduct is completed;

(2) The Notice of Inmate Rule Violation and Disciplinary Hearing form is completed; and

(3) The Notice of Inmate Rule Violation and Disciplinary Hearing form is reviewed by a shift supervisor.

There is no dispute that the hearing was conducted twenty-seven days after Gatewood was served with the Notice of Rule violation, or twenty days after the end of the prescribed period to hold the hearing. ECF 21-1 at 34; *see also* ECF 21-1 at 34 (indicating that the shift supervisor reviewed the notice of hearing on the same day it was served on Gatewood).

Juknelis took notice of COMAR 12.02.27.01 during the hearing. ECF 14-2 at 3. COMAR 12.02.27.01 provides:

A. The Commissioner of Correction shall establish inmate disciplinary procedures intended for the:

(1) Efficient administration of inmate discipline; and

(2) Orderly operation of a correctional facility.

B. These regulations do not convey or create enforceable rights, interests, or benefits for a Division of Correction inmate.

C. Except for failure to comply with due process, an inmate's conviction for a rule violation is not affected by the failure of the Division of Correction to meet procedural or time requirements under this chapter.

At the hearing, the facility representative explained that the delay in holding the hearing was due to "a large back log of cases that are being heard in the order which they are received." ECF 14-2 at 4; *see also* ECF 1 at 3; ECF 21 at 1-2. Juknelis found the explanation reasonable and noted that Gatewood could not articulate how the delay harmed his defense. The hearing proceeded. ECF 14-2 at 3.

Juknelis found Gatewood guilty of violating inmate Rule 105 (possession of a weapon) and Rule 406 (possession of contraband). ECF 1 at 3; ECF 14-2 at 5; ECF 21-1 at 32.[2] He sanctioned Gatewood with 90 days of punitive segregation, revoked 90 days of good conduct credit for the violation of Rule 105, and imposed 30 days of punitive segregation for the violation of Rule 406, to be served concurrent with the sanction for the violation of Rule 105. ECF 14-2 at 6; ECF 21-1 at 32. Juknelis also sanctioned Gatewood with a mandatory loss of visitation for six months. *Id*.

Gatewood appealed the hearing officer's decision to the Warden, but received no response. ECF 1 at 4; ECF 21-1 at 14-16. Therefore, on October 15, 2012, Gatewood appealed to the Inmate Grievance Office ("IGO"). ECF 21-1 at 3-6, 29.[3] He claimed a denial of due process and a lack of evidence to support the rule violations. In addition, he complained that he was not provided adequate time at the hearing to review the evidence. *Id.* at 3-6.

On April 12, 2013, Administrative Law Judge ("ALJ") Bernard McClellan held a hearing on the appeal. And, in a thorough, well reasoned, and comprehensive "Decision" issued on June 28, 2013 (ECF 21-1 at 29-46), the ALJ denied Gatewood's grievance. *Id.* at 39.[4]

The ALJ ruled, *inter alia*, that although the delay in holding the hearing was "substantial," dismissal of the charges against Gatewood was unwarranted. ECF 21-1 at 34-35. In reaching his decision, the ALJ considered, *inter alia*, COMAR 12.02.27.13B. It provides that,

---

[2] Curiously, ECF 14-2 at 7 indicates "Date of Decision: 2/14/13." I have not found an explanation for that date, nor has the defense provided one.

[3] Gatewood signed the form on October 15, 2012. ECF 21 at 6. However, the ALJ states that the appeal was filed on October 18, 2012. *Id.* at 29. The discrepancy is not material.

[4] Curiously, it was Gatewood, not the defense, who furnished the Court with several important exhibits, such as the ALJ's Decision and the decision of the Circuit Court for Allegany County.

if an inmate raises a violation of a time requirement, a rule violation may be dismissed only if the hearing officer finds:

> (1) A time requirement or procedure established in this chapter for the hearing process has been denied the inmate;
>
> (2) The denial is not based on good cause; and
>
> (3) The defendant inmate has demonstrated that the denial has substantially harmed the inmate's ability to make a case presentation as to the rule violation charged.

Further, the AJL noted that Gatewood did not present any argument as to how the delay substantially harmed his ability to present his case. The ALJ also determined that the reason provided for the delay -- a backlog of cases – constituted good cause. *Id.* at 36. In this regard, the ALJ stated: "The DOC's ability to conduct disciplinary hearings is, in large part, dictated by the number of proceedings to be conducted (over which they have no control) and the number of staff available to conduct those hearings." ECF 21-1 at 36. And, the ALJ stated that "as long as the DOC provides due process protections to inmates by providing that an inmate's ability to make their case presentation shall not be substantially harmed by such a delay (COMAR 12.02.27.13B(3), a delay based upon a significant backlog would constitutes good cause." *Id.*

Thereafter, Gatewood sought judicial review. On May 27, 2014, the Circuit Court for Allegany County affirmed the ALJ's decision. ECF 21-1 at 41.

Defendants assert that no good conduct credit was actually revoked because Gatewood had no good time credits, and therefore the revocation was not processed. ECF 14-2 at 7; ECF 14-3 (Decl. of Cynthia Simmons, Litigation Coordinator), at 1, ¶ 2; ECF 14-3 at 2-3. Gatewood counters that he had good conduct credits available to revoke. ECF 21 at 3; ECF 21-1 at 17-22.

Litigation coordinator Cynthia Simmons avers in her Declaration (ECF 14-3) that on September 12, 2016, Tina Geraghty, who is a manager in the Western Regional Commitment

5

Office, indicated that Gatewood was "eligible to lose 90 good conduct credits on August 23, 2012. However, no good conduct credits were taken due to the OBSCIS[5] 08 screen entry neglecting to say 'lose 90 gcc.'" ECF 14-3 at 1 ¶1; see ECF 14-3 at 3 (e-mail from Tina Geraghty). Gatewood provides no evidence to demonstrate that good conduct credits were actually revoked.

## II. Standard Of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, ____ Fed. App'x ____, 2016 WL 6958439, at *2 (4th Cir. Nov. 29, 2016) (per curiam).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an

---

[5] "OBSCIS" refers to the Offender Based State Correctional Information System. It is a database used by Maryland correctional institutions to assist in identifying prisoners and to track pertinent information. *See, e.g.*, *Muhammad v. Shearin,* ELH- 13-1072 20014 WL 2803823, n. 5 (D. Md. June 18, 2014).

obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, *supra*, at *2 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).

7

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment

8

ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

9

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

Defendants argue that Gatewood has failed to demonstrate a due process violation. Defendants also assert that the doctrine of respondeat superior[6] does not operate to impose liability on Secretary Moyer and that defendants are entitled to qualified immunity.

Gatewood's due process claim is premised on the denial of his request to dismiss the infraction charges against him because the disciplinary hearing was held beyond the time prescribed by State regulation. *See* COMAR 12.02.27.12B. It appears that Gatewood generally faults Warden Wolfe and Secretary Moyer for reviewing and affirming disciplinary rule violations.

In the prison context, due process analysis examines whether a constitutionally protected liberty interest is at stake, and if so, what protections are required. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Prisoners retain rights under the Due Process Clause, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

---

[6] Respondeat superior is a legal doctrine that holds that in some circumstances an employer is liable for the actions of an employee when the actions are performed within the scope of employment.

a defendant in such proceedings does not apply." *Id.* at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).

Gatewood contends that the facts of his case are similar to those in *Hopkins v. Maryland Inmate Grievance Commission*, 40 Md. App. 329; 391 A.2d 1213 (1978), and that the *Hopkins* case supports his claims for relief. ECF 21 at 8. In *Hopkins*, the Maryland Court of Special Appeals determined that an "ordinary" backlog of cases does not equate to exceptional circumstances within the meaning of a DOC rule that required hearings for institutional infractions to be held within 72 hours. *Id.* at 333, 391 A.2d at 1215-16. Nevertheless, the court was not persuaded that the brief delay constituted a violation of due process. *Id.* at 337, 391 A.2d at 1218.

Historically, the Supreme Court and the lower federal courts concentrated on whether state action was discretionary or mandatory to determine if a liberty interest was established, and due process protections thereby implicated. The liberty interest inquiry focused on the mandatory language and substantive predicates found in the pertinent regulation to determine whether an enforceable expectation in a particular outcome had been created. *See generally Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454 (1989); *Hewitt v. Helms,* 459 U.S. 460, 471 (1983). Were this approach still appropriate, this court would proceed to examine whether Gatewood received adequate due process protection. *See*, *e.g.*, *Massey v. Singleton*, No. 91-7297 (4th Cir. Nov. 9, 1992) (unpublished); *Taylor v. Jordan*, 922 F.2d 836, 1, No. 90-6872 (4th Cir. Jan. 2, 1991) (unpublished).

In *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), the Supreme Court rejected this approach. The Court refocused attention on the nature of the deprivation, stating that a liberty interest may be created when state action imposes an "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Id*. at 484. The reasoning of the Court in *Sandin* requires that the due process inquiry focus on the nature of the deprivation alleged and not on the language of particular prison regulations. *Id*.

In the ordinary course of prison administration and inmate discipline, inmates' due process rights are limited to those situations in which mandatory language in state laws or regulations creates enforceable expectations, *see Wolff*, 418 U.S. at 545 n.5 (1974), and *Meachum v. Fano*, 427 U.S. 215, 228 (1976), and where, in addition, the adverse action of which the inmate complains subjects the inmate to a sanction that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

> The United States Court of Appeals for the Fourth Circuit said that its precedents
>
> "do[ ] not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." Rather, inmates must first establish that an interest in avoiding onerous or restrictive confinement conditions "arise[s] from state policies or regulations" (*e.g.*, a regulation mandating periodic review).

*Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (quoting *Prieto v. Clarke*, 780 F.3d at 249 (4th Cir. 2015)) (alterations in *Incumaa*; internal citation omitted).

First, the court must determine what "the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for this particular inmate?" *Incumaa,* 791 F.3d at 527 (quoting *Prieto*, 780 F.3d at 253). Then, the court must determine "whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Incumaa,* 791 F.3d at 527.

The "general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Id*. at 527. The "baseline for atypicality" may shift depending on

13

the "prisoner's conviction and sentence." *Id*. (quoting *Prieto*, 780 F.3d at 253). Periods of administrative segregation, even with restrictive conditions, have been held insufficient to trigger the applicability of the Due Process Clause. Placement in administrative segregation, by itself, does not create an atypical or significant hardship in relation to the ordinary incidents of prison life. *See Incumaa*, 791 F.3d at 527; *Prieto*, 780 F.3d at 249-5; *McNeill v. Currie,* 84 F. App'x 276, 277 (4th Cir. 2003) (per curiam) (unpublished). Rather, inmates must make a greater showing of hardship in order to meet this requirement. *See, e.g., Incumaa*, 791 F.3d at 527; *Prieto*, 780 F.3d at 249-51; *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997).

Gatewood avers that due to the delay in holding his disciplinary hearing, he was subjected to "atypical and significant hardship in relation to the ordinary incidents of prison life." ECF 21 at 9. He asserts that, as compared to inmates in the general population, inmates on administrative segregation receive less out-of-cell time, recreation, library and telephone access, visitation privileges, programming, and attendance at religious worship. *Id*. at 10-11. For example, when plaintiff was in the general population, he had nine hours of out-of-cell time each day, whereas while in administrative segregation pending a hearing he was allowed only one hour of out-of-cell time every other day. *Id.* at 10. In the general population, Gatewood was permitted up to six hours of outdoor activity each day, whereas he was not permitted outdoor recreation while on administrative segregation. *Id.* In the general population, Gatewood was permitted to have a television, radio, word processor, game system, and purchase food and snack from the commissary, but these privileges were unavailable to him while he was an administrative segregation inmate.

Limitations on privileges, property, and activities for administratively segregated inmates "fall[ ] within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515

14

U.S. at 485; *see Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in a prisoner's "location, variations of daily routine, changes in conditions of confinement (including administrative segregation)," and "denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently"). A temporary assignment to segregated confinement—thirty days or even six months, with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures—is not atypical or a significant hardship. *See Sandin*, 515 U.S. at 485-86; *Beverati v. Smith*, 120 F.3d at 504 (finding six months under conditions dictated by administrative segregation policies was not atypical under *Sandin*). Given the circumstances alleged, Gatewood fails to establish that the conditions in administrative segregation amounted to atypical and significant hardship in relation to the ordinary incidents of prison life, so as to implicate a protected liberty interest.

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592.

Of import here, federal procedural due process in the correctional setting does not prescribe a specific timeline for conducting the hearing or providing notice of the hearing.

15

Further, there is no constitutional right to confront and cross-examine witnesses or to retain or obtain appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308. 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence," *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985), and the hearing officer's decision contains a written statement of the evidence relied upon *See Baxter*, 425 U.S. at 322, n.5. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Rather, the findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456-57: *see also Baker v. Lyles*, 904 F.2d 925. 933-34 (4th Cir. 1990).

Gatewood received all the process he was due. He received written, prior notification of the disciplinary hearing. He was permitted to testify on his own behalf. ECF 21-1 at 10. The evidence introduced against him included photographs of the sharpened objects and testimony from the facility representative Officer Owalabi. *Id.* at 9-10, 11. Moreover, Gatewood acknowledged that the sharpened objects were his, but he claimed that they were used only to repair appliances. *Id.* at 10. As a result, the hearing officer's decision was based upon some evidence, which was explained thoroughly, and Gatewood was provided a written copy of the decision. ECF 21-1 at 15.

As noted, plaintiff pursued his claims in an appeal to the IGO. The ALJ rejected plaintiff's claims. Then, Gatewood sought judicial review, but the circuit court judge found no merit to plaintiff's claims.

The mere fact that a DOC rule or regulation was violated does not necessarily mean that a due process violation occurred. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("a state does not necessarily violate the Constitution every time it violates one of its rules."); *Ewell v. Murray,* 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due."). In short, the adoption of procedural guidelines does not give rise to a liberty interest. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). Therefore, the failure to follow regulations does not, in and of itself, result in a violation of due process. Further, regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim where, as here, the constitutional minimum is met. *See e.g. Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002). As such, defendants are entitled to summary judgment in their favor as to Gatewood's claims.[7]

### IV. Conclusion

When the facts are viewed in the light most favorable to Gatewood, there is no genuine dispute as to any material fact. Defendants are entitled to judgment in their favor as a matter of law. Accordingly, for the reasons stated herein, I will grant defendants' Motion.

An Order follows.

April 26, 2017                                _____/s/_____
Date                                                   Ellen L. Hollander
                                                       United States District Judge

---

[7] Having determined there was no constitutional violation, I need not address whether Secretary Moyer's involvement was sufficient to confer liability in this matter. Moreover, I need not address defendants' defense of qualified immunity.